UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEWAYNE PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12-cv-251-WTL-MJD |
| ) | |
| GRACE BROWN, ) | |
| ) | |
| Defendant. ) | |

**Entry Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment [Dkt. 41] must be **granted.**

## I. Background

The plaintiff in this civil rights action is Dewayne Pierce ("Pierce"), an inmate at the Pendleton Correctional Facility ("Pendleton"). The defendant, Nurse Alana "Grace" Brown ("Nurse Brown"), was at all relevant times employed at Pendleton.[1]

Pierce alleges that he has a serious medical condition, ulcerative colitis, and that on July 14, 2010, Nurse Brown refused to provide him any medical care when he was experiencing severe abdominal pain.

Nurse Brown seeks resolution of Pierce's claim through the entry of summary judgment. Pierce has not opposed the motion for summary judgment.

---

[1] Although the motion for summary judgment was filed on behalf of Grace Brown and CMS/Corizon, there is and has been only one defendant in this action, Grace Brown. The portion of the motion for summary judgment that discusses any claim against CMS/Corizon will be disregarded.

## II.  Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

As noted, Pierce has not opposed the motion for summary judgment. The consequence of his failure to do so is that he has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## III.  Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Pierce as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:

Pierce has been incarcerated at Pendleton since January 9, 2003. In November of 2005, Pierce was diagnosed with ulcerative colitis.

Nurse Brown became a registered nurse in 1989 and has worked as a registered nurse in various correctional facilities for more than seven years. She has worked at Pendleton since February of 2010. As part of her duties, Nurse Brown handles incoming calls and complaints, sees and triages inmates, and provides medications pursuant to physician orders. In order to appropriately triage or evaluate the urgency of an inmate's medical needs, Nurse Brown performs a visual examination, gathers medical information regarding his symptoms, and takes his vital signs. A registered nurse is not licensed to order or prescribe medication for a patient.

*Ulcerative Colitis*

Ulcerative colitis is an inflammatory bowel disease that affects the lining of the large intestine and rectum. The most frequent symptoms and effects of the disease are diarrhea, stomach pain, weight loss, anemia, malnutrition, nausea, vomiting, and gastrointestinal bleeding. Treatment for ulcerative colitis includes various medications to control the symptoms and reduce the frequency and severity of flare-ups, or periods of time when a patient's symptoms may worsen. Treatment, however, may not prevent flare-ups or cure the disease. Unfortunately, a patient's ulcerative colitis can continue to worsen despite diagnosis and appropriate treatment.

*Pierce's medical treatment*

From December 6, 2005, to the present, Pierce has been provided medication for the treatment of his ulcerative colitis. Most of Pierce's medications are "may carry" or "keep on person" medications, meaning Pierce is allowed to keep them in his cell or on his person. Since December of 2005, Pierce has received various combinations of medications to treat his ulcerative colitis which have included, but are not limited to: Asacol (anti-inflammatory), Prednisone (corticosteroid used to reduce inflammation), Ferrous Sulfate (iron supplement used for the treatment and prevention of iron deficiency), Imodium (for treatment of diarrhea),

Colazal (anti-inflammatory which targets inflammation in the colon (bowel)), Bentyl (anticholinergenic used to treat irritable bowel syndrome by relaxing the muscles in the intestines), Sulfasalazine (anti-inflammatory), Folic Acid (B-vitamin supplement), and APAP (Tylenol pain reliever).

Pierce has experienced flare-ups since his diagnosis in December of 2005. Occasionally, Pierce's flare-ups have warranted a one-time order for Toradol and Phenergan injections which are used for pain management. These medications do not treat or prevent complications related to an active ulcerative colitis flare-up. They require a prescription order from a licensed physician, nurse practitioner or physician assistant. From April through July 2010, Pierce regularly received and signed for his ulcerative colitis medications, as well as Naproxen and Tylenol. Additionally, pain medications including Ibuprofen, Aleve and Acetaminophen were available for Pierce to purchase from commissary.

On May 5, 2010, Pierce completed a Request for Health Care advising Dr. Wolfe that he was experiencing a flare-up and wanted his "2 shots." On May 7, 2010, Dr. Wolfe ordered one dose of Toradol and Phenergan good only for May 7, 2010.

If there is not a current or ongoing order for a prescription medication, a registered nurse does not have the authority to provide it to a patient. On May 7, 2010, Pierce's active prescriptions were: Claritin, Asacol, One-A-Day Essential vitamins, Zantac, Prozac, Loperamide, Naprosyn, Folic Acid, and Tylenol.

On June 14, 2010, Dr. Wolfe refilled Pierce's prescriptions for Folic Acid, Loperamide and Claritin. On June 23, 2010, Dr. Wolfe refilled Pierce's prescription for Zocor. On July 2, 2010, Bonnie Neff, APN saw Pierce in the chronic care clinic for his ulcerative colitis. Pierce had gained ten pounds since his last chronic care visit and his symptoms were noted to be

"unchanged." Nurse Practitioner Neff ordered Pierce to continue his current medication regimen, scheduled him for another chronic care visit, and ordered blood and thyroid tests.

On July 10, 2010, Pierce completed a Request for Health Care seeking a sick-call visit with Dr. Wolfe to obtain an order for a bottom bunk because it was difficult for him to make it to the restroom from the top bunk. This request did not include a request to be seen by Dr. Wolfe, nor did it include a request for his pain shots.

On July 12, 2010, Dr. Wolfe ordered a six-month bottom bunk pass for Pierce due to his irritable bowel syndrome and potential medication side effects. On July 13, 2010, psychiatrist Vicki Burdine, M.D. saw Pierce and noted that he was having a very rough month, which included stress with his family. Dr. Burdine discontinued his nortriptyline and ordered a trial of doxepin to help manage his anxiety. On July 13, 2010, Pierce completed two Request for Health Care forms seeking a bottom bunk assignment from the mental health department. Again, Pierce did not include a request to be seen by a medical provider, nor did he request any additional medication.

*July 14, 2010 incident*

On the evening of July 14, 2010, Nurse Brown received a call from Sgt. Ross advising that Pierce had requested to be taken to the infirmary to receive his prescription shots. Upon review of Pierce's medical records, Nurse Brown discovered that on May 7, 2010, Dr. Wolfe ordered a one-dose injection of Toradol and Phenergan. The prescription was not renewed at any time between May 7, 2010 and July 14, 2010, so she advised Sgt. Ross that Pierce did not have a current prescription for the injections. At approximately 11:45 p.m. on July 14, 2010, Sgt. Ross brought Pierce to the infirmary. Pierce demanded his pain "shot." Nurse Brown advised Pierce that she could not give him injections because there was not a current order for them. Pierce then

demanded that she call Dr. Wolfe. Nurse Brown advised Pierce that she could not call Dr. Wolfe because he was not the physician on-call at that time. She offered to contact the nurse practitioner who was on-call at the time, but Pierce refused and stormed out of the infirmary before Nurse Brown was able to assess his symptoms or take his vital signs. Without information regarding Pierce's symptoms or vital signs, Nurse Brown was unable to assess whether or not Pierce required further medical attention.

*Subsequent Care*

At 12:20 a.m. on July 15, 2010, Linda Ashby, LPN saw Pierce for abdominal pain. At 12:30 a.m., Nurse Ashby obtained a physician order from Nurse Practitioner Neff to call for an ambulance to transfer Pierce to the hospital and started an IV line. She called the ambulance at 12:33 a.m. and it arrived at 12:43 a.m. The ambulance departed with Pierce at 1:12 a.m. Pierce was hospitalized from July 15, 2010 until July 21, 2010 for treatment of his ulcerative colitis "flare." Wishard physicians performed numerous tests and administered ulcerative colitis medications. Pierce did not have a perforated bowel and no operative measures were required to treat him. This flare-up was similar in nature to other flare-ups experienced by Pierce.

*Opinions of Dr. Wolfe and Dr. Mitcheff*

Dr. Wolfe has worked as a licensed physician for 43 years and has personally treated Pierce's ulcerative colitis. He opines that Nurse Brown's actions did not fall below the standard of care and nothing that the physicians or nurses did, or allegedly failed to do, caused Pierce to experience his July 2010 ulcerative colitis flare-up. As his treating physician, Dr. Wolfe prescribed medication, monitored his blood counts, and provided Pierce with additional pain medication when he experienced flare-ups.

Dr. Mitcheff is a licensed physician who has been practicing medicine for 25 years. He is currently the Regional Medical Director of Corizon, Inc., the company that contracts with the Indiana Department of Correction to provide medical care to various prisons throughout Indiana. Upon his review of the care provided to Pierce, Dr. Mitcheff provides several opinions based on his training, education, experience and personal knowledge.

First, Dr. Mitcheff opines that on July 14, 2010, Nurse Brown was unable to assess Pierce's medical condition and without additional information regarding his symptoms and vital signs, it was unnecessary for Nurse Brown to contact the on-call provider regarding Pierce's demands for his "pain shots." He further opines that even if Nurse Brown had been given the opportunity to obtain an order for Toradol and Phenergan injections, these pain medications would not have treated Pierce's subsequent flare-up and he would have required hospitalization regardless. Pierce was fully evaluated by Nurse Ashby 35 minutes later and an ambulance was called 48 minutes later. This alleged delay did not cause Pierce any additional harm than the harm already caused by Pierce's unpreventable ulcerative colitis flare-up. Additionally, Dr. Mitcheff attests that Nurse Brown's actions did not fall below the applicable standard of care.

B. Analysis

At the time of his confinement at Pendleton, Pierce was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment=s proscription against the imposition of cruel and unusual punishments. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pierce alleges that on July 14, 2010, he experienced a severe flare-up of his ulcerative colitis but Nurse Brown deliberately refused to provide him two shots of medicine that he requested. He alleges that he was vomiting blood and felt severe abdominal pain. He alleges that Nurse Brown would not see him and said there was nothing she could do for him and that her refusal to act resulted in his hospitalization and the rupture of his intestine.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.@ *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendant does not dispute that Pierce had an objectively serious medical condition consisting of ulcerative colitis.

As to the second element, A[t]o show deliberate indifference, Pierce must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it.@ *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680

F.3d at 1018-1019 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted).

Pierce's allegations are not supported by admissible evidence. The sworn affidavits of Nurse Brown and two medical experts are not contradicted. Pierce's ulcerative colitis was monitored and treated by the medical staff at Pendleton. Nurse Brown did not have the authority to prescribe the medications sought by Pierce on the night of July 14, 2010. Nurse Brown also could not call Pierce's treating physician, Dr. Wolfe, because he was not on duty. Nurse Brown did offer to call the nurse practitioner on duty but Pierce refused that and did not allow Nurse Brown to take his vital signs. These circumstances do not rise to the level of deliberate indifference. Even if Pierce had shown negligence on the part of Nurse Brown, which he has not done, that would not be sufficient to survive summary judgment as to his claim of deliberate indifference. *See Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008) ("negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense"). In addition, there is no evidence that Nurse Brown's actions fell below the applicable standards of care.

Within less than an hour after Pierce saw Nurse Brown, an order to call an ambulance was obtained and Pierce was taken to the hospital where his flare-up was treated. Pierce has presented no evidence showing that the delay of less than an hour in getting to the hospital was caused by Nurse Brown. Pierce has not identified a genuine issue of material fact as to his claim that Nurse Brown was deliberately indifferent to his serious medical needs.

## IV. Conclusion

For the reasons set forth above, the motion for summary judgment filed by Nurse Grace Brown [Dkt. 41] must be **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/10/13

William T. Lawrence

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

Dewayne Pierce
973650
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064